# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-19-00210-CR

---

**Jose Morales, Appellant**

**v.**

**The State of Texas, Appellee**

---

### FROM THE 390TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-DC-17-300766, THE HONORABLE JULIE H. KOCUREK, JUDGE PRESIDING

---

### M E M O R A N D U M   O P I N I O N

A jury found appellant Jose Morales guilty of murder and assessed his punishment at confinement for fifty years in the Texas Department of Criminal Justice. *See* Tex. Penal Code §§ 12.32, 19.02(b). In a single point of error, appellant complains about the trial court's admission of photographic evidence during both the guilt-innocence and punishment phases of trial. We find no reversible error in the trial court's evidentiary rulings. However, on review of the record, we have found non-reversible error in the written judgment of conviction. We will modify the judgment to correct the error and, as modified, affirm the trial court's judgment of conviction.

# BACKGROUND[1]

The evidence at trial showed that a group of four young women went to a nightclub in South Austin and stayed until the club closed. As they were leaving, a pickup truck occupied by three young men, who were friends of the women, pulled up behind them. Two of the women got out of their car to talk to the men in the truck. One of the women's ex-boyfriend was also in the club parking lot in a car with three of his friends, including appellant, who was his cousin.[2] Appellant's cousin approached his ex-girlfriend, and, as the two were talking, the passenger of the truck expressed his desire to have the ex-girlfriend and her friends leave the club with him and his friends in the truck. An altercation ensued between the men in the truck and the men in appellant's car. During the altercation, appellant and the passenger from the truck pushed each other. The women intervened to calm the situation down, and the altercation ended. After the altercation, all three vehicles—the car with the group of women friends (the women's car), the pickup truck, and appellant's car—left the parking lot.

Over the course of the next several hours, the interaction between the three vehicles and their occupants continued and involved escalating violence.[3] Ultimately, the three

---

[1] Because appellant does not challenge the sufficiency of the evidence supporting his conviction, we provide only a general overview of the facts of the case. *See King v. State*, 953 S.W.2d 266, 267 (Tex. Crim. App. 1997). We provide additional facts as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* Tex. R. App. P. 47.1, 47.4. The facts recited are taken from the testimony and other evidence presented at trial.

[2] Since appellant was an occupant of this car, we refer to this car as appellant's car, although he was not the driver, and it was not his car.

[3] The evidence reflects that after leaving the club parking lot, the truck followed appellant's car, and the occupants of both vehicles threw bottles at each other. They arrived at an apartment complex where appellant's cousin lived, and the passenger from the truck hit the cousin's car—which was not one of the vehicles being driven that night—with a bat, breaking out the windows. At some point, while at the boyfriend's apartment complex, a "big gun"

2

vehicles arrived at yet another apartment complex. First, the women's car and the pickup truck arrived and parked in the visitor parking area, and the occupants talked with each other. A few minutes later appellant's car arrived at the complex; appellant was seated in the back seat. He pointed a gun out of the car window and discharged it into the air. The men in the truck tried to leave. However, appellant's car began following the truck through the apartment complex. A high-speed chase ensued. The truck attempted to leave the parking lot at an exit of the apartment complex, but the women's car moved to block the exit. On being blocked, the truck jumped a curb and turned onto a grassy area, where it got stuck. Appellant's car stopped behind the truck, preventing it from backing up.

Appellant got out of the car with a large rifle and fired multiple shots into the passenger side of the truck. The passenger was shot multiple times and died inside the truck.[4] The driver was also shot but got out of the truck and ran. He was shot again as he ran from the truck. The third occupant of the truck, who was riding in the back seat, hid behind the front seats during the shooting and avoided injury. After shooting into the truck, appellant returned to his car with the rifle. The two cars—appellant's car and the women's car—fled the scene.

wrapped in a blanket was placed into appellant's car. The evidence further reflects that multiple calls and text messages were exchanged between the occupants of the vehicles and that, several times, the occupants in the women's car "lured" the men in the truck to various locations to meet up with the occupants of appellant's car. On one occasion, all three vehicles were at another apartment complex (not the complex where appellant's cousin lived), and appellant attempted to shoot out of the passenger-side window of his car towards the occupants of the truck, but the rifle did not discharge.

[4] The medical examiner who performed the autopsy on the passenger testified that the cause of death was multiple gunshot wounds because "[e]ach of the wounds caused injury, so all of them together as a whole resulted in his death, though some are more severe than others." The evidence showed that the passenger sustained six gunshot wounds, including one fatal shot to the back of the head.

During the ensuing investigation of the shooting, police ascertained that appellant was the shooter through eyewitness statements (including that of appellant's girlfriend, who was in the car with appellant that night), corroborating evidence, and appellant's admission to police, but they were unable to recover the murder weapon.

Appellant was charged with two offenses arising out of the shooting: murder for causing the death of the passenger of the truck and aggravated assault for inflicting injuries to driver of the truck. The murder case proceeded to trial, and appellant was convicted and sentenced to fifty years in prison. This appeal followed.

## DISCUSSION

In his sole point of error, appellant complains about the trial court's evidentiary rulings relating to the admission of seven photographic exhibits over his objections under Rule 403 of the Texas Rules of Evidence. He argues that the trial court erred "by admitting evidence with no probative value but substantial prejudicial value by showing injury, guns, and circumstances that had no tendency to prove any material issues in either [sic] guilt/innocence other than to appeal to emotions resulting in a very substantial punishment."[5]

---

[5] Appellant further asserts that his "right to a fair trial on punishment was denied which denied the Appellant of due process of law in violation of the Fourteenth Amendment to the United States Constitution." Appellant did not object to the admission of any of the complained-of exhibits on constitutional grounds. He never mentioned due process or the Fourteenth Amendment; he in no way informed the trial court that he was asserting that the admission of the exhibits at issue violated his right to due process.

With the exception of those rights involving systemic requirements or rights that are non-forfeitable but may be affirmatively waived, all appellate complaints—whether constitutional, statutory, or otherwise—are forfeited absent a timely request for relief in the trial court. *See Mendez v. State*, 138 S.W.3d 334, 341 (Tex. Crim. App. 2004); *see also* Tex. R. App. P. 33.1(a)(1)(A) (imposing requirement of making specific request, objection, or motion to preserve complaint for appellate review). To the extent that appellant attempts to raise a

## Standard of Review

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Gonzalez v. State*, 544 S.W.3d 363, 370 (Tex. Crim. App. 2018); *Henley v. State*, 493 S.W.3d 77, 82–83 (Tex. Crim. App. 2016). An abuse of discretion does not occur unless the trial court acts "arbitrarily or unreasonably" or "without reference to any guiding rules and principles." *State v. Hill*, 499 S.W.3d 853, 865 (Tex. Crim. App. 2016) (quoting *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990)). Further, we may not reverse the trial court's ruling unless the determination "falls outside the zone of reasonable disagreement." *Johnson v. State*, 490 S.W.3d 895, 908 (Tex. Crim. App. 2016); *see Henley*, 493 S.W.3d at 83 ("Before a reviewing court may reverse the trial court's decision, 'it must find the trial court's ruling was so clearly wrong as to lie outside the zone within which reasonable people might disagree.'" (quoting *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008))). An evidentiary ruling will be upheld if it is correct on any theory of law applicable to the case. *Henley*, 493 S.W.3d at 93; *Sandoval v. State*, 409 S.W.3d 259, 297 (Tex. App.—Austin 2013, no pet.).

## Photographic Exhibits

At trial, appellant objected to the admission of multiple photographic exhibits. On appeal, he complains about the admission of seven of the objected-to exhibits. Specifically, he complains about the admission of States Exhibits 232, 299, 306, 310, and 315 during the

---

constitutional claim here, we do not address it, concluding that any complaint based on constitutional grounds has not been preserved for appellate review. *See Golliday v. State*, 560 S.W.3d 664, 670 (Tex. Crim. App. 2018) (explaining that "trial courts must be presented with and have the chance to rule on the specific constitutional basis for admission").

guilt-innocence phase of trial and the admission of State's Exhibits 319 and 210 during the punishment phase of trial.

*Guilt-Innocence Phase*

- State's Exhibit 232

At trial, the driver of the truck testified about the events of the night, including the injuries that he sustained in the shooting. During his testimony, the State offered State's Exhibit 232, a photograph of the driver that depicted his injuries. Appellant objected to the photograph because the exhibit was "highly prejudicial," was not necessary to show that the witness had been shot, and the purpose was "just to inflame the jury." The State responded that, while the aggravated assault involving the driver of the truck had been severed out of the murder case involving the deceased passenger, the State had to prove appellant's criminal intent with respect to the passenger.

The trial court noted that "it was all the same incident how [appellant] shot at these [victims]" and found that the evidence had probative value as to the State's burden of proof of "culpability" and that it outweighed the prejudicial effect. The court explicitly limited that evidence to the one picture of the driver.

- State's Exhibit 299

During the testimony of the firearm and toolmark examiner—who examined the spent shell casings recovered from the murder scene, shell casings recovered from appellant's apartment, and the projectiles recovered from the victims— the State offered State's Exhibit 299, a depiction of an ARX 160 rifle captured from the Beretta firearms manufacturer's website, after the examiner testified that, based on his

examination of the spent shell casings, the ARX 160 rifle could fire the caliber of ammunition used that night.[6] The prosecutor acknowledged that "this is not a picture of a weapon recovered in this case" because no weapon had been recovered but offered the exhibit as "an example of a weapon that could be used to fire this ammunition." Appellant objected, asserting, "This is a picture of a weapon. There is no evidence that this picture has anything to do with this case."

The trial court clarified with the State that the exhibit was being offered for "demonstrative purposes" and overruled appellant's objection, stating that "[t]he probative value outweighs the prejudicial effect."

- State's Exhibits 306, 310, and 315

At trial, a certified forensic computer examiner testified about performing a digital forensic analysis of appellant's cell phone and described the extraction of data, including several images, from the phone. The State offered State's Exhibits 306, 310, and 315, which were photographs of images extracted from appellant's cell phone that depicted appellant in various poses holding a semi-automatic rifle, including one photo showing him holding the firearm with both hands, at shoulder height, and pointing it at the camera. Appellant objected to the photographs, complaining that the photos "would be highly prejudicial, more so than the probative value would provide."

---

[6] The examiner compared the spent shell casings from the murder scene and the shell casings from appellant's apartment and determined that all of them had been fired from the same firearm. Due to the damage that the projectiles sustained after being fired and entering the victims' bodies, there was not enough information on the projectiles for the examiner to make a comparison to determine if they had been fired from a single firearm.

The trial court clarified with the State that these photographs were images that had been extracted from appellant's cell phone and noted that the firearm in the photos "is the same type of gun that was used in this shooting" according to the firearm and toolmark expert.[7] The court overruled appellant's objection, stating that the exhibits were admissible "because they came from [appellant's] phone" and show a firearm that "can shoot the bullets that were found at the scene."[8]

Rule 403 of the Texas Rules of Evidence allows for the exclusion of otherwise relevant evidence if its probative value is substantially outweighed by the danger of, among other things, "unfair prejudice." Tex. R. Evid. 403. Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial. *Davis v. State*, 329 S.W.3d 798, 806 (Tex. Crim. App. 2010); *Gallo v. State*, 239 S.W.3d 757, 762 (Tex. Crim. App. 2007). "The probative force of evidence refers to how strongly it serves to make the existence of a fact of consequence more or less probable." *Gonzalez*, 544 S.W.3d at 372; *accord Davis*, 329 S.W.3d at 806.

"'Unfair prejudice' refers to a tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Davis*, 329 S.W.3d at 806; *accord Gigliobianco v. State*, 210 S.W.3d 637, 641 (Tex. Crim. App. 2006). All testimony and physical evidence are likely to be prejudicial to one party or the other. *Davis*, 329 S.W.3d at 806; *Jessop v. State*, 368 S.W.3d 653, 694 (Tex. App.—Austin 2012, no pet.). "To violate Rule 403, it is not

---

[7] The evidence at trial reflected that appellant had bought his phone about one month before the offense.

[8] The record indicates that more than just these three photographs of images extracted from appellant's cell phone were the subject of this objection at trial. The trial court's ruling appears to have eliminated several photographs as "cumulative," noting the prejudicial effect of "admitting all of these pictures even though they were on [appellant's] phone."

8

enough that the evidence is 'prejudicial'—it must be *unfairly* prejudicial." *Vasquez v. State*, 67 S.W.3d 229, 240 (Tex. Crim. App. 2002). It is only when there exists "a clear disparity between the degree of prejudice produced by the offered evidence and its probative value that Rule 403 is applicable." *Hernandez v. State*, 390 S.W.3d 310, 324 (Tex. Crim. App. 2012); *accord Davis*, 329 S.W.3d at 806; *see Johnson*, 490 S.W.3d at 911 ("Under Rule 403, the danger of unfair prejudice must *substantially* outweigh the probative value.").

When conducting a Rule 403 analysis, the trial court must balance:

> (1) the inherent probative force of the proffered item of evidence along with, (2) the proponent's need for that evidence against, (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted.

*Gonzalez*, 544 S.W.3d at 372 (quoting *Gigliobianco*, 210 S.W.3d at 641–42). These factors may blend together in practice. *Gigliobianco*, 210 S.W.3d at 642.

Concerning photographs, Rule 403 requires that a photograph possess some probative value and that its inflammatory nature not substantially outweigh that value. *Gonzalez v. State*, 616 S.W.3d 585, 594 (Tex. Crim. App. 2020); *Williams v. State*, 301 S.W.3d 675, 690 (Tex. Crim. App. 2009). "We examine several factors, including the photographs' probative value, their potential to impress the jury in some irrational and indelible way, the time needed to develop the evidence, and the proponent's need for the photographs." *Gonzalez*, 616 S.W.3d at 594 (citing *Prible v. State*, 175 S.W.3d 724, 733 (Tex. Crim. App. 2005)). "We also consider their number, gruesomeness, detail, and size; whether they are in color, are close-ups, and depict a clothed versus a naked body; the availability of other means of proof; and other circumstances

unique to the individual case." *Id.* (citing *Williams*, 301 S.W.3d at 690). "Generally, photographs are admissible if verbal testimony about the matters depicted in the photographs would be admissible and their probative value is not substantially outweighed by any of the Rule 403 counter-factors." *Threadgill v. State*, 146 S.W.3d 654, 671 (Tex. Crim. App. 2004) (citing *Erazo v. State*, 144 S.W.3d 487, 489 (Tex. Crim. App. 2004)).

The probative force of evidence refers to how strongly it serves to make the existence of a fact of consequence more or less probable. *Gonzalez*, 544 S.W.3d at 372; *Gigliobianco*, 210 S.W.3d at 641. Here, State's Exhibit 232, which depicted the injuries to the driver of the truck (the surviving co-victim of the shooting), demonstrated the severity of the injuries inflicted on the victims of appellant's shooting. *See Tretter v. State*, No. 03-12-00034-CR, 2014 WL 3893016, at *3 (Tex. App.—Austin Aug. 7, 2014, pet. ref'd, untimely filed) (mem. op., not designated for publication) (noting that "the extent of the injuries to the victim" and "the method used to produce the injuries" are among factors from which intent can be inferred) (citing *Patrick v. State*, 906 S.W.2d 481, 487 (Tex. Crim. App. 1995); *Duren v. State*, 87 S.W.3d 719, 724 (Tex. App.—Texarkana 2002, pet. struck)); *see also Moore v. State*, 969 S.W.2d 4, 16 n.5 (Tex. Crim. App. 1998) (Keller, J., concurring and dissenting) ("The extent of a victim's injuries is, of course, a reflection of the strength of a defendant's attack[.]"). From the evidence in State's Exhibit 232, the jury could infer that appellant caused the injuries to the victims in the truck, including the passenger's death, "intentionally or knowingly" or "with intent to cause serious bodily injury." *See Etheridge v. State*, 903 S.W.2d 1, 14 (Tex. Crim. App. 1994), *superceded by statute on other grounds as stated in Diaz v. State*, 110 S.W.3d 181, 184 (Tex. App.—San Antonio 2003, pet. ref'd)) (stating that "[e]vidence of the extent of the victim's injuries is relevant if it is probative of an element which the State must prove in establishing the

charged offense"); *Nobles v. State*, 843 S.W.2d 503, 513 (Tex. Crim. App. 1992) (concluding that doctor's testimony about wounds inflicted on victim "was relevant as to the seriousness of the assault upon [the victim], and, hence, appellant's felonious intent, and the trial judge did not err in admitting it."); *see, e.g.*, *Miller-El v. State*, 782 S.W.2d 892, 895 (Tex. Crim. App. 1990) (stating that evidence of surviving victim's paralysis was admissible at guilt-innocence stage of defendant's trial for capital murder and attempted capital murder "as probative of [defendant's] intent to kill both [the decedent] and [the surviving victim]").

State's Exhibit 299, which showed an ARX 160 rifle from the Beretta firearms manufacturer's website, was a demonstrative exhibit that, while not a depiction of a weapon recovered in this case, showed the type of rifle that could have been the murder weapon, given that it was, as the firearm and toolmark expert opined, capable of shooting the type of ammunition recovered from the murder scene. The Court of Criminal Appeals has stated that demonstrative evidence "is admissible upon the trial of a criminal case if it tends to solve some issue in the case and is relevant to the cause[,] that is, if it has evidentiary value, i.e., if it sheds light on the subject at hand." *Simmons v. State*, 622 S.W.2d 111, 113 (Tex. Crim. App. 1981). Here, the issue of whether appellant caused the passenger's death using a firearm was a key element of the charged murder offense, and the murder weapon was not recovered. The exhibit depicted a firearm that was shown to be a similar type of firearm of approximately the same size and style as the murder weapon that eyewitnesses described and that, based on the testimony of the firearm and toolmark examiner, could fire the ammunition that struck the passenger and caused his death. Thus, the demonstrative evidence of State's Exhibit 299 had probative value in showing the type of weapon that appellant could have used to cause the passenger's death. *See id.* (holding that object "that is not an exact replica or duplicate of the original is admissible if it

11

is relevant and material to an issue in the trial and is not overly inflammatory, and the original, if available, would have been admissible at trial" and observing that determination of admissibility of "a similar type" weapon or instrument used in commission of offense is decision that "must rest largely in the discretion of the trial judge").

As for State's Exhibits 306, 310, and 315, the photographs depicting appellant posing with a similar style semi-automatic rifle, these exhibits showed appellant's connection to the type of firearm that could have been used in the shooting in this case. This evidence tended to show that appellant was familiar with and, more importantly, had access to a firearm capable of shooting the ammunition that caused the passenger's death.

Thus, concerning State's Exhibits 232, 299, 306, 310, and 315, it would not have been outside the zone of reasonable disagreement for the trial court to find that the evidence presented in these exhibits was highly probative of several elements of the charged offense.

As for the State's need for the evidence, "[w]e evaluate the State's need for the evidence by looking at whether the fact related to a disputed issue and whether the State had other evidence establishing that fact." *Gonzalez*, 544 S.W.3d at 372; *State v. Mechler*, 153 S.W.3d 435, 441 (Tex. Crim. App. 2005). The record reflects that no murder weapon was recovered, and the eyewitnesses were unable able to give more than a general description of the firearm that appellant used in the shooting that night. The State had the burden of showing that appellant was the shooter and that he had the requisite culpable mental state when he caused the passenger's death. While appellant avers in his brief that "there is no doubt that the Appellant caused the death of the victim by shooting the victim multiple times," appellant contested his culpability at trial. Given the inconsistent, and at times conflicting, testimony of the eyewitnesses, and the State's burden of showing both appellant's culpability in causing the

12

passenger's death and his intent to do so, it would not have been outside the zone of reasonable disagreement for the trial court to have found that the State's need for the evidence in State's Exhibits 232, 299, 306, 310, and 315 was great.

Regarding whether the evidence had a strong potential to impress the jury in an irrational and indelible way such that it would find guilt on grounds other than proof of the charged offense, the complained-of evidence was used by the State to demonstrate appellant's access to and familiarity with a potential murder weapon—that is, a firearm capable of shooting the ammunition that left the shell casings recovered from the crime scene and whose projectiles struck the victims in the truck and caused the passenger's death—and his intent to use that firearm to cause death or serious bodily injury. The evidence did not have "the capacity to lure the [jury] into declaring guilt on a ground different from proof specific to the offense charged." *See Gonzalez*, 544 S.W.3d at 373. Appellant's intent when he shot the victims and his access to a firearm to shoot them was not independent of the charged offense but directly related to it. For these reasons, it would not have been outside the zone of reasonable disagreement for the trial court to conclude that State's Exhibits 232, 299, 306, 310, and 315 did not have a strong potential to impress the jury in such a way that it would irrationally find guilt on an improper basis. *See, e.g.*, *Vasquez*, 67 S.W.3d at 239–40 (concluding that challenged evidence was directly relevant to case because it was used to show motive for committing offense and therefore did not have tendency to suggest decision on improper basis).

Further, the exhibits were not only directly relevant to appellant's intent at the time of the shooting and his access to a potential murder weapon, *see* Tex. R. Evid. 401 (evidence is relevant if it makes material fact more or less probable), but they were relatively simple and straightforward. Thus, they did not have a tendency to confuse or distract the jury

from the main issues in the case, *see Casey v. State*, 215 S.W.3d 870, 880 (Tex. Crim. App. 2007), nor did they have the potential to lead the jury to consideration of factual disputes that were only tangentially related to the issues in the case, *see Wiley v. State*, 74 S.W.3d 399, 407 n.21 (Tex. Crim. App. 2002).

Finally, while the State presented the exhibits through several witnesses—the driver of the truck, the firearm and toolmark examiner, and the digital forensic expert—at different times during the course of the trial, the time needed to develop this evidence was not overly extensive. Nor was the time such that it distracted the jury from consideration of the indicted offense given that appellant's access to a firearm to commit the offense and his intent at the time of the shooting were relevant to the charged offense. Moreover, none of the exhibits were particularly repetitive, and, in fact, the trial court took steps to eliminate the presentation of cumulative evidence.

In light of the State's burden of proof and the matters placed at issue by the defense, and considering all the Rule 403 factors, we cannot conclude that the trial court's Rule 403 determination concerning State's Exhibits 232, 299, 306, 310, and 315—that the probative value of these exhibits was not substantially outweighed by the danger of unfair prejudice—was outside the zone of reasonable disagreement.

*Punishment Phase*

- State's Exhibits 319 and 320

After the jury returned its guilty verdict, appellant objected, outside the presence of the jury, to two additional photographs of images extracted from his phone that the State intended to offer during the punishment phase: State's Exhibit 319, which

depicted two handguns with a bottle of whiskey next to a glass of what appears to be whiskey along with five mini Ziploc bags that contain a white powdery substance; and State's Exhibit 320, which depicted another semi-automatic rifle on the front passenger seat of a car.  Appellant objected, asserting that the exhibits were not "relevant to any issues here before the Court, nothing to show where they were taken, when they were taken, that they were taken by the defendant, that he endorses them in any way."  He further expressed that he "[didn't] know what relevance it has to this case, punishment or anything."

The trial court noted that "it is jury sentencing and the photos were found on [appellant's] phone, and . . . he had only been here two months . . . and [the photographs] were taken pretty close to the offense for which he was charged."[9] Ultimately, the court ruled, "It's relative [sic] to punishment, and the probative value outweighs prejudicial effect so they will be admissible."

Subsequently, when the State offered State's Exhibits 319 and 320 in front of the jury, appellant objected, stating that he "renew[ed] the objection."  The trial court indicated that it had "already ruled on those yesterday" and admitted the exhibits, implicitly overruling appellant's objection again.

In applying the Rule 403 factors to State's Exhibits 319 and 320, we must consider that the photographs were admitted at the punishment stage of appellant's trial.  The question to be determined at the punishment phase is not whether the defendant is guilty of some offense—that question has already been answered in the affirmative.  Instead, the purpose of a

---

[9] As noted in a previous footnote, the evidence in the record reflected that appellant only had the cell phone for about one month. *See supra* n.7.  Appellant maintained that "all we know" is when the photographs were found on the phone, not necessarily when they were taken.

15

punishment hearing is to allow the factfinder to determine what would be an appropriate punishment for the offense. *See Rodriguez v. State*, 203 S.W.3d 837, 842 (Tex. Crim. App. 2006); *Rogers v. State*, 991 S.W.2d 263, 265 (Tex. Crim. App. 1999). The task of assessing punishment within the prescribed range is a normative judgment that usually does not depend on the determination of discrete facts. *Ex parte Chavez*, 213 S.W.3d 320, 323 (Tex. Crim. App. 2006); *see Beham v. State*, 559 S.W.3d 474, 478 (Tex. Crim. App. 2018) (stating that "[d]eciding what punishment to assess is a normative process, not intrinsically factbound" (quoting *Murphy v. State*, 777 S.W.2d 44, 63 (Tex. Crim. App. 1988) (plurality op. on reh'g), *superseded by statute on other grounds*, Act of May 29, 1989, 71st Leg., R.S., ch. 785, § 4.04, 1989 Tex. Gen. Laws 3471, 3492 (eff. Sept. 1, 1989) (amended 1990, 1993, 1995, 1996, 1997, 1999, 2001, 2005, 2007, 2011, 2013) (current version at Tex. Code Crim. Proc. art. 37.07))).

By statute, during the punishment phase of trial, a trial court may admit evidence "as to any matter [it] deems relevant to sentencing," including the defendant's character. Tex. Code Crim. Proc. art. 37.07, § 3(a)(1); *see Sunbury v. State*, 88 S.W.3d 229, 233 (Tex. Crim. App. 2002) (explaining that "determining what evidence should be admitted at the punishment phase of a non-capital felony offense is a function of policy rather than a question of logical relevance"); *see also Sims v. State*, 273 S.W.3d 291, 294 (Tex. Crim. App. 2008) (observing that "what is admissible as relevant to the punishment determination is no longer constrained by considerations of what is patently inadmissible at the guilt phase of trial").

When appellant objected to State's Exhibits 319 and 320 at trial, he did not articulate a specific reason as to why these exhibits were unfairly prejudicial as to punishment other than to note that the evidence did not establish when the photographs were taken. He failed to address the probative value (or unfair prejudice) of the presence of the photographs on his

16

phone, regardless of when they were taken, or to explain how they were unfairly prejudicial punishment evidence. On appeal, appellant does not address the particular "unfair prejudice" of these two exhibits but argues that all seven of the objected-to photographic exhibits were not "in any way necessary to prove the cause or manner of death but were admitted in the guilt/innocence and punishment phases to show Appellant as violent and depraved, despite the lack of criminal history."

"What is 'relevant' to the punishment determination is simply that which will assist the fact finder in deciding the appropriate sentence in a particular case." *Sims*, 273 S.W.3d at 295 (citing *Mendiola v. State*, 21 S.W.3d 282, 285 (Tex. Crim. App. 2000)). "When the jury assesses punishment, it must be able to tailor the sentence to the particular defendant, and relevance is simply 'a question of what is helpful to the jury in determining the appropriate sentence for a particular defendant in a particular case.'" *Id.* (quoting *Ellison v. State*, 201 S.W.3d 714, 719 (Tex. Crim. App. 2006)). The State contends that that the photographs were probative of appellant's character, showing his "priorities," which included "guns, booze, and drugs."

Considering the record in light of the Rule 403 factors and the trial court's broad discretion under section 3 of article 37.07 to admit "any matter deemed relevant," we cannot conclude that the trial court abused its discretion by admitting State's Exhibits 319 and 320 during the punishment phase over appellant's Rule 403 objection. It was not outside the zone of reasonable disagreement for the trial court to find that the probative value of the photographs as punishment evidence concerning appellant's character was not substantially outweighed by the danger of unfair prejudice.

17

For the above reasons, we cannot conclude that the trial court abused its discretion in admitting the seven complained-of photographic exhibits at trial. *See Gonzalez*, 616 S.W.3d at 594 ("Where elements of a photograph are genuinely helpful to the jury in making its decision, and the photograph's power 'emanates from nothing more than what the defendant has himself done[,] we cannot hold that the trial court has abused its discretion merely because it admitted the evidence.'" (quoting *Sonnier v. State*, 913 S.W.2d 511, 519 (Tex. Crim. App. 1995))); *Prible*, 175 S.W.3d at 734 n.20 ("If there are elements of a photograph that are genuinely helpful to the jury in making its decision, the photograph is inadmissible only if the emotional and prejudicial aspects substantially outweigh the helpful aspects." (quoting *Erazo*, 144 S.W.3d at 492)). Accordingly, we overrule appellant's sole point of error.

**Error in Judgment**

On review of the record, we observe that the written judgment of conviction in this case contains non-reversible error.

First, the judgment states that the "Statute for Offense" is "PC 19.02(c)." This statutory provision of the Penal Code establishes that the offense of murder is, generally, a first-degree felony. However, the applicable statutory provision for the offense for which appellant was convicted is section 19.02(b) of the Penal Code, the statutory provision that defines the offense of murder.

Second, the judgment reflects that the "Findings on Deadly Weapon" are "N/A." However, the indictment in this case alleged the use of a deadly weapon *per se*.[10] Further, after

---

[10] Specifically, the indictment alleged, in two alternative paragraphs, that appellant "did then and there intentionally or knowingly cause the death of [the passenger], an individual, by shooting [the passenger] with a firearm" and that appellant "did then and there, with the intent to

finding appellant guilty of murder, the jury made an explicit deadly weapon finding.[11] Accordingly, the jury made an affirmative finding that appellant used a deadly weapon during the commission of the offense and that the deadly weapon that he used was a firearm. *See Polk v. State*, 693 S.W.2d 391, 393–94 (Tex. Crim. App. 1985) (explaining that "affirmative finding" means trier of fact's express determination that deadly weapon was actually used or exhibited during commission of offense and outlining circumstances indicative of express deadly weapon finding by trier of fact). Therefore, the trial court was statutorily required to enter those findings in its judgment. *See* Tex. Code Crim. Proc. arts. 42.01, § 1(21) (requiring judgment to reflect affirmative deadly weapon findings); 42A.054(c) (providing that "[o]n an affirmative finding regarding the use or exhibition of a deadly weapon . . . , the trial court shall enter the finding in the judgment of the court"), (d) (providing that "[o]n an affirmative finding that the deadly weapon . . . was a firearm, the court shall enter that finding in its judgment").

This Court has authority to modify incorrect judgments when the necessary information is available to do so. *See* Tex. R. App. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993). Accordingly, we modify the trial court's written judgment of conviction to reflect that the "Statute for Offense" is "PC 19.02(b), (c)," and that the "Findings on Deadly Weapon" are "YES, A FIREARM."

---

cause serious bodily injury, commit an act clearly dangerous to human life that caused the death of [the passenger], an individual, to wit: shooting the said [the passenger] with a firearm, thereby causing the death of [the passenger]." A firearm is a deadly weapon *per se*. *See* Tex. Penal Code § 1.07(a)(17)(A) (defining "deadly weapon" as "a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury").

[11] The verdict form returned by the jury stated, "We further find that the Defendant used or exhibited a deadly weapon to wit: a firearm, during the commission of the offense."

## CONCLUSION

Having concluded that the trial court did not abuse its discretion by admitting the complained-of exhibits but having found that the written judgment contains non-reversible error as set out above, we modify the judgment to reflect that the "Statute for Offense" is "PC 19.02(b), (c)" and that the "Findings on Deadly Weapon" are "YES, A FIREARM." As so modified, the trial court's judgment of conviction is affirmed.

_____

Melissa Goodwin, Justice

Before Justices Goodwin, Triana, and Smith

Modified and, as Modified, Affirmed

Filed:   March 26, 2021

Do Not Publish